**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: Nikola Corp., *et al.*,<br><br>Debtors. | :<br>:<br>: | Chapter 11<br>Bankr. No. 25-10258-TMH<br>(Jointly Administered) |
| Trevor Milton,<br>Appellant,<br>v.<br><br>Thomas A. Pitta, not individually but solely in his capacity as Liquidating Trustee of the Liquidating Trust of Nikola Corp., *et al.*,<br><br>Appellee. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civ. No. 25-1194-GBW |

**<u>OPINION</u>**

## I. INTRODUCTION

Pending before the Court is an appeal from the Bankruptcy Court's order confirming the *Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Nikola Corporation and its Debtor Affiliates* (Bankr. D.I. 1036-1)[1] (AA245-364) (the "Plan"). The Order confirming the Plan was entered on September 12, 2025 (Bankr. D.I. 1036) (AA185-243) (the "Confirmation Order"), following extensive motion practice, solicitation of votes, and a contested evidentiary hearing (AA046-184) (Sept. 5, 2025 Hr'g Tr.). Appellant Trevor Milton, the founder and former Chief Executive Officer ("CEO") of debtor Nikola Corporation ("Nikola"), has appealed the Confirmation Order on the basis that the Plan improperly subordinates his general unsecured claim pursuant to section 510(c) of the Bankruptcy Code, which provides that, "under principles of equitable subordination," the Bankruptcy Court may "subordinate for purposes of distribution all or

[1] The docket of the chapter 11 cases, captioned *In re Nikola Corp., et al.*, No. 25-10258 (TMH) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The appendix (D.I. 20) filed in support of Appellant's opening brief is cited herein as "AA__," and the joint appendix (D.I. 27) filed in support of the Appellees' joint answering brief is cited herein as "SA__."

part of an allowed claim to all or part of another allowed claim." 11 U.S.C. § 510(c). Appellant's proof of claim alleged that Nikola owes him $69,758,064.15 pursuant to certain separation and indemnification agreements which obligated Nikola to reimburse him for his legal fees under certain circumstances.

Following an eight-day arbitration hearing, a panel found that Appellant had breached his fiduciary duties of loyalty and good faith to the company and that his misconduct had damaged it. Although Appellant had been separately convicted of securities fraud, the arbitrators did not rely on his conviction at all but rather solely on the evidence presented during the arbitration hearing. The Bankruptcy Court determined that the arbitration award—which at the time of the plan confirmation hearing had been confirmed by the U.S. District Court for the District of Arizona (and was later affirmed by the Ninth Circuit Court of Appeals)—has preclusive effect, and "provide[d] more than adequate evidence" of inequitable conduct, and because Appellant's inequitable conduct harmed other creditors, the Bankruptcy Court confirmed the Plan which equitably subordinated Appellant's claim pursuant to section 510(c), over Appellant's objection.

Appellant raises a litany of arguments on appeal, including that the arbitration award was not preclusive, that a presidential pardon he received erases the fact of his misconduct, and that the equitable subordination of his claim constitutes a penal sanction precluded by his pardon. Appellant does not dispute, however, that the arbitration award found fiduciary breaches, or that such breaches qualify as inequitable conduct sufficient to equitably subordinate an insider's claim under Third Circuit law. For the reasons set forth herein, the Confirmation Order will be affirmed.

## II. BACKGROUND

### A. Factual Background

Between at least 2016 and 2020, Appellant, as Nikola's then-CEO, engaged in a public relations campaign through social media and television appearances in which he grossly

misrepresented Nikola's business and financial outlook. (SA5-45; SA55-56 & n.6.) Appellant's fraud was first publicly revealed, at least in part, when a short seller issued a report exposing many of Appellant's prior public statements as false. (SA289-345; *see* SA290 ("We have never seen this level of deception at a public company, especially at this size."). Appellant resigned from Nikola ten days later (AA021), and the SEC instituted cease-and-desist proceedings against Nikola centering on Appellant's various false statements (AA279-80).

On December 21, 2021, the SEC issued an order imposing a $125 million civil penalty upon Nikola, finding that "Nikola primarily misled investors through scores of misrepresentations by its CEO and later Executive Chairman Milton." (AA288-89.) On October 14, 2022, a federal jury found Appellant guilty of securities and wire fraud, and he was sentenced to 48 months in prison. (SA397-98.) To fund his legal defenses, Appellant began claiming rights to indemnification under a separation agreement that he had with Nikola. (AA080.) Although Nikola initially advanced him $36.8 million to cover legal fees (AA357), it began to dispute the reasonableness of his requests (AA080). Appellant then commenced an arbitration (AA098-99), seeking to compel Nikola to indemnify him based on $32 million of invoicing from a major law firm. (AA161.) Of that sum, the arbitrator found that Nikola had already paid approximately $14 million, leaving the amount at issue at $18 million. (AA161.) In February 2022, the arbitration panel ruled in Nikola's favor, finding $17.2 million out of the $18 million advancement request to be unreasonable. (AA099.)

Separately, Nikola commenced its own arbitration alleging that Appellant had breached his fiduciary duties to Nikola. (AA288-89.) A panel of three arbitrators held an eight-day hearing in July and August 2023 and issued an arbitration award[2] on November 17, 2023. (AA289; SA1-134

---

[2] *See Nikola Corp. v. Milton*, Case No. 23-cv-2635 (D. Ariz.), Doc. No. 22-1 (declaration attaching the arbitration panel's Decision and Final Award, dated Nov. 17, 2023, as redacted by Nikola Corp.).

(as redacted by Nikola).) The award found that Milton violated his fiduciary duties of loyalty and good faith to Nikola through a pattern of false and misleading public statements about Nikola's products and the state of their development, and by subordinating the Company's interests to his own by refusing all efforts to review and approve his public statements in advance. (AA288-89; SA55 n.6; *see* SA5-45 (summarizing false statements).) Although the panel acknowledged Appellant's criminal fraud conviction, the panel stated that his conviction "has not been considered or given any substantive weight" in its finding that he had breached his fiduciary duties. (SA8 n.1.)

The panel further concluded that Appellant's misstatements caused tens of millions of dollars in damages to Nikola, including the $125 million SEC fine and millions in legal fees and expenses. (SA128-133; AA289.) After performing a comparative fault analysis, the panel ordered Appellant to compensate Nikola for 97% of these damages. (SA95.) With interest, Appellees asserted that Appellant owes Nikola approximately $96.8 million under the arbitration award. (AA289; AA359.) While one arbitrator filed a dissent from the award, the dissenter disagreed with the majority only as to how much comparative fault should be attributed to Nikola as compared to Appellant.[3] The dissent agreed that Nikola had proven through the evidence presented that Appellant had "violated his fiduciary duty of loyalty and good faith to Nikola."[4]

Nikola filed a petition to confirm the arbitration award in Arizona federal court in December 2023.[5] (AA289.) Appellant moved to vacate the award.[6] Appellant did not contest the arbitration panel's finding that he had breached his fiduciary duties, arguing instead that the panel had erred in

---

[3] *See Nikola Corp. v. Milton*, Case No. 23-cv-2635 (D. Ariz.), Doc. No. 22-2 (declaration attaching dissent to arbitration award).
[4] *See id.* at 105.
[5] *See Nikola Corp. v. Milton*, Case No. 23-cv-2635 (D. Ariz.), Doc. No. 1 (petition for confirmation of arbitration award).
[6] *See Nikola Corp. v. Milton*, Case No. 23-cv-2635 (D. Ariz.), Doc. No. 21 (brief in support of motion to vacate or modify arbitration award).

finding that Nikola was only 3% at fault for the resulting damages.[7] The Arizona District Court denied Appellant's motion, confirmed the arbitration award, and entered judgment in Nikola's favor.[8] On November 4, 2024, the Arizona District Court issued an amended judgment to clarify the specific amounts awarded and the terms set forth in the judgment.[9] Appellant appealed the Arizona District Court decision to the Ninth Circuit Court of Appeals.[10] On February 5, 2026, the Ninth Circuit affirmed the Arizona District Court's confirmation of the arbitration award.[11]

In a parallel proceeding, Appellant also appealed his criminal conviction to the Second Circuit Court of Appeals.[12] While that appeal was pending, President Trump issued Appellant a "full and unconditional" pardon for his criminal offenses on March 27, 2025. (SA405-06.) The next day, during a press conference, when asked why he pardoned Appellant, the President responded:

> Highly recommended by many people that was taken advantage of. He did a business deal, like in Utah as I have it, and I think he was exonerated. And then they brought him into New York where he had a rough, rough road and a road—I mean he—he was exonerated. It was a big celebration. Again, I don't know him, but I was—they say it was very unfair. And they say the—the thing that he did wrong was he was one of the first people that supported a gentleman named Donald Trump for president. He supported Trump. He liked Trump. I didn't know him, but he liked him. It was in Utah. And they went after him. They went after his family. They went after his businesses. And he was, I believe, exonerated. And then they went after him again. And they brought him, this time into Manhattan, and he had nothing to do with Manhattan. And they got him. And I said that's unfair. There are many people like that. They support Trump and they went after them. You don't realize. This is a vicious group of people that were in this office before us. This was a vicious group. They're violent. What they were—what they were doing to people. And you could go story after—hundreds and even thousands of stories. And they went after this man. And when I heard about it, I said, nope, not going to happen. They persecuted—they destroyed five years of his

---

[7] *See id.* at 7-17.
[8] *Nikola Corp. v. Milton*, Case No. 23-cv-2635 (D. Ariz.), Doc. No. 35.
[9] *Nikola Corp. v. Milton*, Case No. 23-cv-2635 (D. Ariz.), Doc. No. 49.
[10] *Nikola Corp. v. Milton*, Case No. 23-cv-2635 (D. Ariz.), Doc. No. 50.
[11] *See Nikola Corp. v. Milton*, No. 24-6210, 2026 WL 311616 (9th Cir. Feb. 5, 2026); D.I. 31-1.
[12] *See* Case No. 21-cr-478 (S.D.N.Y.), Doc. No. 331.

> life. He went fourth for five years of his life, and he did nothing wrong. And he's a good person. And basically, I had these fantastic recommendations about him from people that you know very well, all top of the line people. They thought it was a horrible thing. There were—there are many such cases, by the way, many such cases.

(AA038.)[13] Following the pardon, Appellant filed a motion to voluntarily withdraw his appeal of his criminal conviction, which the Second Circuit granted.[14] The district court lifted Appellant's bail and ordered his special assessment be refunded, but did not vacate his conviction.[15] Because Appellant had been granted bail pending appeal, he was never incarcerated. The SEC's civil action against Appellant, which had been stayed pending his criminal case, was dismissed by stipulation.[16]

### B. Procedural History

On February 19, 2025 (the "Petition Date"), Nikola and certain affiliates (the "Debtors") filed voluntary chapter 11 petitions. Thereafter, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). (AA190.) Appellant filed a proof of claim asserting a general unsecured claim for $69,758,064.15 for the legal fees purportedly owed under separation and indemnification agreements. (AA004.)[17] Appellant's proof of claim form also asserted that his claim could be used as a "setoff" against the amount Appellant owes to Nikola under the arbitration award. (AA002.)

---

[13] The White House no longer routinely publishes transcripts of President Trump's remarks. A clip of these remarks is available at https://www.youtube.com/watch?v=vECW9H-9nUQ (last visited Sept. 9, 2026.)

[14] *See U.S. v. Milton,* Case No. 24-259 (2d Cir.), Doc. No. 54.

[15] *See U.S. v. Milton,* Case No. 21-cr-478 (S.D.N.Y), Doc. No. 365.

[16] *See SEC v. Milton,* Case No. 21-cv-6445 (S.D.N.Y.), Doc. Nos. 53, 54.

[17] The Debtors requested that Appellant supply the supporting invoices, but none were produced. (SA589-590.) Debtors later served discovery requests seeking the supporting documentation for Appellant's claim. Appellant responded by filing a motion for a protective order to avoid having to produce the documents that purportedly would support his claim. (*See* Bankr. D.I. 1311 at 4.) Pursuant to a stipulation of the parties approved by the Bankruptcy Court, the deadline to respond to the motion for protective order (and other motions filed by Appellant) has been extended for 30 days following a final order in this appeal of the Confirmation Order. (*See* Bankr. D.I. 1396.)

The Debtors sought to disallow and equitably subordinate Appellant's claim, and to deny his setoff rights. To those ends, they submitted a first amended plan on July 23, 2025, that equitably subordinated Appellant's claim under section 510(c) of the Bankruptcy Code. (SA150; SA152; SA 188; SA191.) Because the Debtors' assets were insufficient to pay back their unsecured creditors in full, equitable subordination of Appellant's claim would result in his receiving no distribution. (SA191.) The first amended plan also stated that Appellant would not "be entitled to assert any right of setoff, subrogation, or recoupment of any kind" on any obligation that he owed the estate, such as the money he owed under the arbitration award. (SA216.)

The Debtors further submitted a brief addressing their request for equitable subordination, claim disallowance, and setoff preclusion with respect to Appellant's claim. (SA250-88.) The Debtors noted that section 510(c) of the Bankruptcy Code authorized the subordination of a claim when the claimant has engaged in inequitable conduct that injured other creditors. (SA274-75.) Because Appellant was an "insider," the standard for inequitable conduct was lower, and was certainly met by a showing that he had committed fraud or breached his fiduciary duties. (SA275-76 (citing *In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 69-70 (Bankr. D. Del. 2002)). Appellant's conduct easily satisfied that test, the Debtors explained, because he had been found liable for breaches of fiduciary duty in a confirmed arbitration award and separately convicted on multiple counts of fraud. (SA277-79.) The Debtors further argued that, even if Appellant's claim were not equitably subordinated, it should be disallowed under section 502 because it was unsubstantiated, duplicative of fees Nikola had previously advanced, included amounts the arbitration panel had ruled were unreasonable, and was barred by the indemnification agreement. (SA281-86.)

With respect to Appellant's asserted setoff rights, the Debtors explained that setoff under section 553 of the Bankruptcy Code is an "equitable" right that can be denied when "the creditor has committed inequitable, illegal or fraudulent acts, or [where] the application of setoff would

violate public policy." (SA280-81 (citing *In re Szymanski*, 413 B.R. 232, 243 (Bankr. E.D. Pa. 2009)).) Because the arbitration award and conviction established that Appellant had engaged in such conduct, Debtors contended that his setoff rights should be denied.

Appellant responded by filing an opposition brief raising two arguments. (*See* AA034-45.) First, Appellant asserted that his pardon rendered him "innocent of any wrongdoing," proved that he was "factually innocent" based on "the President's unreviewable determination," and therefore the Plan could not equitably subordinate his claim. (AA036.) Second, Appellant argued that deciding subordination through "confirmation of the proposed plan" would "violate [his] due process rights." (AA043 (capitalization omitted).) Appellant reasoned that his rights to setoff and recoupment were a form of property, which meant that subordination had to be resolved "in the context of an adversary proceeding" where he could testify. (AA043-44.) Appellant did not dispute that the arbitration award was final and binding, nor did he dispute the Debtors' substantive argument that, if Appellant were found to have engaged in inequitable conduct, his setoff and recoupment rights could be denied, notwithstanding section 553. Appellant likewise did not offer any substantive objection to the plan provision precluding the assertion of those rights, making only the procedural argument that an adversary proceeding would be required to achieve that result.

On September 2, 2025, the Debtors submitted a second amended plan. (SA605-06.) The second amended plan's treatment of Appellant's claim and rights was unchanged, providing that his claim would be equitably subordinated and thus extinguished (SA422; SA424; SA464), and that he would be precluded from asserting any setoff and recoupment rights (SA489-90).

The Debtors and the Committee each filed motions in support of plan confirmation, which responded to Appellant's arguments regarding equitable subordination. (SA524-609; SA610-625.) They explained that the arbitration award independently established inequitable conduct sufficient to equitably subordinate Appellant's claim (SA586; SA616-17), and that in any event Appellant's

pardon did not render him innocent of misconduct for purposes of civil bankruptcy law (SA586; SA616-17.) The Debtors also refuted Appellant's procedural argument that subordination of his claim required an adversary proceeding, pointing out that Bankruptcy Rule 7001(h) expressly authorizes a claim's subordination through plan confirmation. (SA588-89.) The Debtors' motion in support of plan confirmation maintained that Appellant's claim should be disallowed for lack of substantiation in the event it was not subordinated first. (SA589-90.)

At the plan confirmation hearing, the parties agreed that subordination and allowance were two separate issues that the Bankruptcy Court should address separately. (AA139-40.) The parties also appeared to agree that equitable subordination was a dispositive "gating" issue. (AA138-39; AA141.) As the parties recognized, the equitable subordination of Appellant's claim would render disallowance unnecessary because Debtors lacked sufficient assets to make any distributions on subordinated claims. (AA139-40.) Accordingly, the Bankruptcy Court first heard argument on equitable subordination. The Debtors argued that the arbitration award established inequitable conduct by itself, given its findings that Appellant had breached his fiduciary duties to Nikola. (AA143-44.) The Debtors further explained that issue preclusion made those findings binding on Appellant because the arbitration award had already been confirmed by a district court, and that its preclusive effect was undiminished by the pendency of Appellant's appeal. (AA144-45.) The Debtors also disputed that the pardon of Appellant's criminal conviction affected the analysis. (AA145-46.)

In response, Appellant's counsel began by insisting that Appellant had a right to testify to "rebut the claims of inequitable conduct" and to "prove up his claim." (AA149-50.) Appellant's counsel did not respond to Debtors' argument that the arbitration award was preclusive as to Appellant's inequitable conduct or explain how Appellant's testimony could negate the arbitration award's preclusive force. Appellant's counsel also conceded that, if Appellant's claim were

equitably subordinated, he would lose his setoff and recoupment rights. (AA151 ("[I]f the Court equitably subordinates his claim[,] that setoff, that recoupment is gone, it's vacated.").)

Appellant's counsel then turned to the pardon, arguing that it absolved Appellant of wrongdoing for purposes of equitable subordination. Appellant's counsel asserted that Appellant had been pardoned because he was innocent, citing the President's remarks at the press conference. (AA153.) The Bankruptcy Court questioned this assertion, explaining that the pardon said nothing "on its face" about innocence, and that there was no need to look to "extrinsic evidence" like the President's oral statements when the written pardon itself was "clear." (AA153-54.)

Announcing its decision from the bench, the Bankruptcy Court overruled Appellant's objections, ruled that his claim could be equitably subordinated under section 510(c), and ultimately confirmed the plan. (AA168-76; AA181-82.) The Bankruptcy Court explained that the arbitration award established through "issue preclusion" that Appellant had engaged in inequitable conduct, and that "there [was] no evidence" Appellant could offer that would "affect the analysis" (AA169-70). While the Bankruptcy Court further found that Appellant's conviction "also evidence[d] the commission of fraud and other illegality," which his pardon did not negate (AA170-74), the Bankruptcy Court concluded by emphasizing that the arbitration panel's finding of misconduct "provide[d] more than adequate evidence, an overwhelming amount of evidence," to establish equitable subordination, even without the "criminal conviction." (AA174.) Because Appellant could not receive any distribution once his claim was equitably subordinated, the Bankruptcy Court did not rule on Debtors' disallowance arguments. (AA137-38.)

The Bankruptcy Court entered the Confirmation Order on September 12, 2025. The Plan includes provisions that equitably subordinated Appellant's claim (AA301), and that preclude him from asserting setoff or recoupment rights in the future (AA326).

On September 25, 2025, Appellant filed a timely notice of appeal with respect to the

Confirmation Order. (D.I. 1.) The Court granted the Committee's motion to intervene in the appeal as an appellee. (D.I. 16.) Thomas Pitta (the "Liquidating Trustee," and together with the Committee, the "Appellees"), in his capacity as trustee of the Liquidating Trust established pursuant to the Plan, has been substituted for the Debtors as appellee. (D.I. 30.) The appeal is fully briefed. (D.I. 19, 26, 28, 31.) No party requested oral argument.

## III. JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The Confirmation Order is a final order. A district court "review[s] the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof." *In re Pro. Ins. Mgmt.*, 285 F.3d 268, 282–83 (3d Cir. 2002). The Court's *de novo* review of legal determinations includes its application of collateral estoppel. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 247-48 (3d Cir. 2006). The Bankruptcy Court's decision to deny setoff or recoupment is reviewed for abuse of discretion. *See United States ex rel. IRS v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983).

## IV. ANALYSIS

### A. The Bankruptcy Court Committed No Error in Confirming a Plan that Subordinated Appellant's Claim Based on Appellant's Inequitable Conduct

Section 510(c) of the Bankruptcy Code codifies the "judge-made doctrine" of equitable subordination. *U.S. v. Noland*, 517 U.S. 535, 538-39 (1996). Equitable subordination empowers a bankruptcy court to "reorder existing priorities among creditors" on equitable grounds, in order "to see that injustice or unfairness is not done in administration of the bankrupt estate." *Burden v. U.S.*, 917 F.2d 115, 117 (3d Cir. 1990) (quoting *Pepper v. Litton*, 308 U.S. 295, 307-08 (1939)).

In general, courts will equitably subordinate a claim when three elements are met: "(1) the

claimant must have engaged in some type of inequitable conduct, (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, and (3) equitable subordination of the claim must not be inconsistent with the provisions of the bankruptcy code." *Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986-87 (3d Cir. 1998) (citing *Noland*, 517 U.S. at 53-39). The standard for "inequitable conduct" is lower when the creditor is an "insider" of the debtor. *In re Mid-Am. Waste Sys.*, 284 B.R. at 70. In such cases, inequitable conduct may be proven by showing the creditor "engaged in illegal or fraudulent conduct" or "breached fiduciary duties owed to the debtor, stockholders, or creditors." *In re Zohar III, Corp.*, 639 B.R. 73, 91 (Bankr. D. Del. 2022), *aff'd*, 620 F. Supp. 3d 147 (D. Del. 2022), *appeal dismissed*, 2022 WL 19038638 (3d Cir. Nov. 10, 2022).

Appellant does not dispute that he was an "insider" of Nikola, or that his conduct meets the second and third prongs of the equitable subordination test. Appellant limits his appeal to the first element of the equitable subordination test—whether he engaged in inequitable conduct. (*See* D.I. 19 at 19-44.) The Court agrees that challenge fails. Once an arbitration award is confirmed, it "becomes a judgment of the court, entitled to 'the same force and effect . . . as . . . a judgment in any other action.'" *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 251 (3d Cir. 2021) (quoting 9 U.S.C. § 13) (alterations omitted). Like all judgments, a confirmed arbitration award thus carries the force of "collateral estoppel." *Witkowski v. Welch*, 173 F.3d 192, 198-99 (3d Cir. 1999). The doctrine of collateral estoppel, commonly referred to as issue preclusion, "forecloses relitigation in a later action [ ] of an issue of fact or law which was actually litigated and which was necessary to the original judgment." *Id.* Here, the parties are bound by the arbitration award's findings in future litigation between them, and may not relitigate any of "the same issues" that were "already adjudicated" to "final judgment." *Id.;* Restatement (Second) of Judgments § 27 cmt. c (1982) ("An issue on which relitigation is foreclosed may be one of evidentiary fact, of 'ultimate

fact' (i.e., the application of law to fact), or of law.")

The Bankruptcy Court correctly applied the doctrine of collateral estoppel. To prove Appellant's inequitable conduct, all that Debtors had to show was that he had breached his fiduciary duties to Nikola. *See In re Zohar III*, 639 B.R. at 91 (first prong satisfied by showing that claimant breached fiduciary duties owed to the debtor, stockholders, or creditors). The arbitration award expressly found that Appellant had breached his fiduciary duties to Nikola "through a pattern of false and misleading public statements about Nikola's products and the state of their development and by subordinating [Nikola]'s interest to his own by refusing all efforts to review and approve his public statements in advance" (SA55; *see* SA9 ("[W]e find that Milton violated his fiduciary duties of loyalty and good faith to Nikola, which caused damages to Nikola.")

Once Nikola secured the Arizona District Court judgment confirming the arbitration award in November 2024, issue preclusion attached. Appellant was thus precluded from relitigating whether he had breached his fiduciary duties and engaged in inequitable conduct, no matter what testimony he could offer. As the Bankruptcy Court explained, "the arbitration panel's findings of [Appellant's] misconduct . . . provide more than adequate evidence . . . to fulfill the first prong of the equitable subordination test." (AA174.) This was a textbook application of preclusion principles, and Appellant's arguments to the contrary are unavailing.

Appellant asserts that the arbitration award was not truly final—and not preclusive—based on his appeal of the award. (D.I. 19 at 44, 47-48.) Setting aside that Appellant forfeited this argument by not raising it below,[18] and that the arbitration award has now been affirmed by the

---

[18] Appellant never challenged the preclusive effect of the arbitration award, much less made any argument based on the Ninth Circuit appeal. (*See* AA034-45.) The only mention of the Ninth Circuit appeal came when the *Debtors* preemptively addressed it at oral argument. (AA144-45.) Debtors' counsel stated that he "would have expected" Appellant to make an argument about the Ninth Circuit appeal but "didn't" do so. (AA144). But even assuming it had been made, counsel explained, such an argument would be incorrect. (AA145.) Even after Debtors' counsel noted that

Ninth Circuit,[19] the argument is foreclosed by Third Circuit precedent. Appellant contends that the arbitration award was not "sufficiently firm" because, at the time of the confirmation hearing, his appeal to the Ninth Circuit remained pending (D.I. 19 at 44; *id.* at 45 (asserting "[a]rbitration awards are not considered 'final' for purposes of issue preclusion absent judicial confirmation of the award.") At the time of the plan confirmation hearing, the arbitration award had been confirmed by the Arizona District Court. In any event, the pendency of an appeal "does not undermine the finality of [a] judgment for collateral estoppel purposes." *O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1066 n.6 (3d Cir. 1991); *see U.S. v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009) ("The pendency of an appeal does not affect the potential for res judicata flowing from an otherwise-valid judgment."); *see also* 18A Wright & Miller, Fed. Prac. & Proc. § 4433 (3d ed. 2025) ("[T]he preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided."). Confirmed arbitration awards are thus binding even if an appeal is pending, as they have "the same force and effect" as any judgment. *See* 9 U.S.C. § 13.

Appellant's remaining arguments are unavailing. Appellant cites the Third Circuit's decision in *Free Speech Coalition,* which set forth several "[f]actors that courts consider when determining whether the prior determination was sufficiently firm" including: "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." (*See* D.I. 19 at 44 (quoting *Free Speech Coalition, Inc. v. Attorney General of the United States*, 677 F.3d 519, 541 (3d Cir. 2012).) All of these factors are met by the arbitration award, however, and while the court in *Free Speech Coalition* held that a prior decision lacked

---

Appellant had failed to make any argument based on the then-pending Ninth Circuit appeal, Appellant offered no response. *Cf. In re Bestwall LLC*, 47 F.4th 233, 244 (3d Cir. 2022) ("[F]ailure to respond to an appellant's argument [operates] as a concession that the assertions are true." (alterations and internal quotation marks omitted)).

[19] *See* D.I. 31-1.

preclusive effect because the district court "never issued a final judgment," 677 F.3d at 541, unlike that case, the district court did so here. The Court rejects Appellant's further argument that the arbitration award is not "sufficiently firm" based on the fact that it included a dissent. (D.I. 19 at 49-50.) Appellant also contends that, because he elected to exercise his Fifth Amendment right against self-incrimination, instead of testifying, the matter was not "fully heard" by the arbitration panel. (*Id.* at 48-49.) Appellant cites no authority in support of this position.

Finally, Appellant argues (*id.* at 21) that his pardon rendered him "innocent" of any misconduct and, therefore, the court erred in relying on the findings of misconduct contained in the arbitration award. Even assuming the Federal Arbitration Act permitted such a collateral attack on the confirmed arbitration award, his argument fails on the merits. As the Supreme Court has made clear, a pardon cannot "relieve the wrongdoer from civil liability." *Angle v. Chi., St. Paul, Minneapolis & Omaha Ry. Co.*, 151 U.S. 1, 19 (1894). Appellant's counsel conceded as much at oral argument. (AA139 (a "pardon doesn't get you out of civil liability").) While a pardon can relieve a defendant from federal criminal punishment, it "cannot stop" civil liability that is merely "remedial" and "for the benefit of the complainant." *Ex parte Grossman*, 267 U.S. 87, 111 (1925).

Appellant claims that the arbitration award cannot serve as evidence of his misconduct, because the Bankruptcy Court had to "defer" to the President's judgment that Appellant did nothing wrong. (D.I. 19 at 37 (arguing that such deference is required by "separation of powers").) But if pardons could dictate facts in civil proceedings such as bankruptcy, then pardons would necessarily extend to civil liability—a result that *Angle* forbids. Pardons would shield defendants from any liability whatsoever, including in purely "remedial" contexts like the equitable subordination of claims, which operates "for the benefit" of private parties. *Ex parte Grossman*, 267 U.S. at 111. But that is not what the law provides. Pardons do not change the fact that a defendant engaged in the underlying misconduct or civil courts' ability to so find. Appellant's pardon thus posed no barrier to

the Bankruptcy Court's finding that he had engaged in misconduct here. Finally, as Appellees correctly point out, the arbitration award was based on breaches of fiduciary duty and false statements—conduct that does not necessarily constitute a criminal offense. Accordingly, even if the pardon meant that Appellant did not engage in criminal fraud, it would not erase the basis for the arbitration award.

The Bankruptcy Court correctly determined that the arbitration award's preclusive findings of misconduct supplied "more than adequate evidence ... to fulfill the first prong of the equitable subordination test" and that its authority to approve an equitable subordination—which is a civil, equitable remedy and not a punishment—is not impeded by the pardon.[20]

### B. The Bankruptcy Court Committed No Error in Confirming a Plan that Precluded Appellant from Asserting Setoff and Recoupment Rights

Appellant further argues that section 553 of the Bankruptcy Code precluded the Bankruptcy Court from eliminating his rights to setoff and recoupment, and that denying those rights was an unconstitutional "taking." (*See* D.I. 19 at 51-57.) Appellees assert that neither of these arguments was preserved for appellate review, and that, in any event, both arguments are wrong. (*See* D.I. 26 at 42-49.) As noted, after the Debtors filed their proposed plan equitably subordinating Appellant's claim and precluding him from asserting any setoff and recoupment rights, Appellant filed an opposition to confirmation, which set forth two arguments: that his presidential pardon prevented a finding of equitable subordination because it rendered him innocent (AA036-43), and that resolving subordination of his claim through confirmation of a plan, and outside of an adversary proceeding, would violate his "due process rights" (AA043-44) (capitalization omitted).[21]

---

[20] As no further evidence of inequitable conduct was needed to support confirmation, this Court need not consider Appellant's additional arguments on appeal regarding whether his pardoned criminal conviction provided further evidence of his inequitable conduct. (*See* D.I. 19 at 19-44.)
[21] The preliminary statement to Appellant's brief (AA034-45) asserts: "Milton has a constitutional protectable right to his contractual indemnification claim liquidated and his common law right of

On appeal, Appellant argues that section 553 of the Bankruptcy Code prevented the Plan's elimination of his setoff rights, and that the Bankruptcy Court committed an unconstitutional taking by doing so without just compensation. (*See* D.I. 19 at 51-58.) Neither of those arguments was presented to the Bankruptcy Court. It is notable that the Debtors' brief in support of subordination made the specific argument that Appellant's setoff rights also may be denied upon a showing of inequitable conduct, citing relevant caselaw, and explaining why such relief is permitted under section 553. (*See* SA280-81 ¶¶ 92-93.) Appellant offered no contrary argument, and at oral argument, his counsel conceded that "if the [c]ourt equitably subordinates his claim, [then] that setoff, that recoupment is gone." (AA151.) The Court agrees this statement was more than mere forfeiture; it was "intentional relinquishment" of an argument. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d at 146-47 (3d Cir. 2017) (quoting *U.S. v. Olano*, 507 U.S. 725, 733 (1993)). And such "[w]aived claims may not be resurrected on appeal." *Id.* at 146 n.7.

Appellant asserts that he preserved his section 553 argument because his proof of claim stated that it was "subject to a right of setoff." (D.I. 28 a 27.) But the fact that Appellant took that position in his proof of claim does nothing to address the argument that the Debtors presented to the Bankruptcy Court, which was that, even if Appellant *does* have a setoff right, it should be denied by reason of his inequitable conduct. Nor does it erase his counsel's later admission that "if the [c]ourt equitably subordinates his claim, [then] that setoff, that recoupment is gone." (AA151.) Appellant further argues that he preserved his section 553 argument by "s[eeking] to testify" at the confirmation hearing about his setoff rights. A party cannot preserve an issue by raising it for the

---

***recoupment*** adjudicated" [sic]. (A036 (emphasis added; *see also* A043 ("Milton has a fundamental constitutional due process right to have his claim against the Debtors adjudicated and liquidated, including the right to ***recoupment*** against the Debtors' attempt to collect and enforce their arbitral awards…") (emphasis added.) The brief includes only these passing references and does not address the substantive argument presented on appeal—that section 553 of the Bankruptcy Code prevented the Plan's elimination of Appellant's recoupment (or setoff) rights.

first time at oral argument. *See In re Grand Jury*, 635 F.3d 101, 105 n.4 (3 Cir. 2011). Moreover, Appellant sought to testify not as to the section 553 issue he presents on appeal—the legal question of whether section 553 permitted his setoff rights to be later denied on equitable grounds—but rather "to rebut the claims of inequitable conduct and ultimately prove up his claim." (AA150.) As the Bankruptcy Court explained, there was no testimony that Appellant could offer that would disprove his inequitable conduct, which had already been established by the arbitration award. (AA150; AA155-156.)

Setting aside that Appellant's failure to present his section 553 and takings arguments to the Bankruptcy Court, those arguments do not require a different outcome here. Appellant argues (D.I. 19 at 51-53) that section 553 preserved his setoff and recoupment rights and thus precluded the Bankruptcy Court from confirming a plan that denied them. That is incorrect. Setoff and recoupment are both "equitable" rights that, under certain circumstances, permit a creditor to satisfy their claim by offsetting a debt that they owe the debtor. *See Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir. 1990) ("The equitable right of setoff … is permissive rather than mandatory."); *In re Straightline Invs., Inc.*, 525 F.3d 870, 882 (9th Cir. 2008) (same for recoupment). Like all equitable rights, they can be denied if the holder engages in inequitable conduct. *See In re Commc'n Dynamics, Inc.*, 382 B.R. 219, 226-28 (Bankr. D. Del. 2008) (setoff); *In re Am. Home Mortg. Holdings, Inc.*, 401 B.R. 653, 655-56 (D. Del. 2009) (recoupment). Indeed, "courts have disallowed an otherwise valid common law right to setoff in compelling circumstances," such as "where the creditor has committed inequitable, illegal or fraudulent acts." *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 739 (Bankr. E.D. Pa. 2000) (internal quotation marks omitted) (collecting various federal appellate cases); *see Norton*, 717 F.2d at 772 (application of setoff "rests in the discretion of that court, which exercises such discretion under the general principles of equality" (internal quotation marks omitted)). The same is true of recoupment, which

"is ultimately a creature of equity" and cannot "countenance … a result that allows a party with unclean hands to escape liability for his misconduct." *In re Lansaw*, 2015 WL 224093, at *20 (Bankr. W.D. Pa. Jan. 14, 2015), *aff'd* 2016 WL 1012597 (W.D. Pa. Mar. 15, 2016), *aff'd* 853 F.3d 657 (3d Cir. 2017); *see also In re Straightline Invs.*, 525 F.3d at 882 ("The doctrine of recoupment does not apply here … because it is an equitable remedy and … may not be invoked to compensate someone who has engaged in inequitable conduct."). In short, even if a creditor possesses a setoff or recoupment right, it will be denied if he engages in inequitable conduct.

Ignoring this argument, Appellant asserts that section 553 categorically "preserves" his setoff rights and barred their elimination. (D.I. 19 at 51.) Appellant misunderstands the nature of section 553, which does not "independent[ly]" create setoff rights, but merely incorporates and "preserve[s] the common-law right of setoff arising out of non-bankruptcy law." *Norton*, 717 F.2d at 772. Because that common law right of setoff was an "equitable" one, *id.*, it could be lost if the claimant engaged in "inequitable conduct," *In re Commc'n Dynamics*, 382 B.R. at 228. Thus, when section 553 "incorporated" the common law right of setoff, it carried along the qualification that setoff would be barred if the creditor engaged in inequitable conduct. The cases cited by Appellant are consistent with this rule. *In re Cont'l Airlines*, 134 F.3d at 541 (stating that section 553 merely "preserve[s]" existing setoff rights); *In re Alta+Cast LLC*, 2004 WL 484881, at *6 (Bankr. D. Del. Mar. 2, 2004) (same). Section 553 thus posed no bar to denying Appellant's setoff rights based on a determination that he engaged in the inequitable conduct identified in the arbitration award.

Appellant's claim for recoupment fails for an independent reason. Appellant contends (D.I. 19 at 53) that he had a right to recoupment (and not merely setoff) because his claim arose from the "same transaction" as the arbitration award. But recoupment is a "strict" and "narrow[]" doctrine that applies only where both debts "arise out of a single integrated transaction." *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1081 (3d Cir. 1992); *see Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*,

209 F.3d 252, 263-64 (3d Cir. 2000) (recoupment applies when claims arise from "same contract" but setoff applies when they arise from "different contracts"). Appellant's claim arose from his indemnification agreement, but his debt to Nikola arose from separate false statements that Appellant made to the public. Even if there were some "logical relationship" between the two, that would not be sufficient. *Univ. Med. Ctr.*, 973 F.2d at 1081. Recoupment requires that the debts arise from an "identical transaction," a linkage that is absent here. *Id.* at 1080.

Finally, Appellant argues that his setoff right was a property interest, and that the Bankruptcy Court "effected a 'taking' by nullifying" that right without just compensation. (D.I. 19 at 57; D.I. 28 at 25.) It is well established that the bankruptcy laws are not a taking when they are imposed prospectively. *See In re Thompson*, 867 F.2d 416, 422 (7th Cir. 1989) ("[L]ien avoidance is not a taking when it is authorized *before* the creditor makes the secured loan in question."); *In re Weinstein*, 164 F.3d 677, 686 (1st Cir. 1999) (finding "no taking" when bankruptcy provision "was in effect" when creditor's property interest "arose"); *In re Thaw*, 769 F.3d 366, 370-72 (5th Cir. 2014) (same). When a creditor acquires property after enactment of the Bankruptcy Code, they take that property "subject to and limited by" the possibility that it could be impaired or precluded by a bankruptcy. *In re Weinstein*, 164 F.3d at 686. Here, Appellant obtained his putative setoff rights decades after enactment of the Bankruptcy Code, which incorporated the existing common law rule that setoff rights can be extinguished due to inequitable conduct. Precluding assertion of those rights based on his inequitable conduct thus did not effectuate a taking.

## V. CONCLUSION

Accordingly, the Confirmation Order will be affirmed. The Court will issue a separate Order consistent with this Opinion.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE